docket 21-2837CV. And I understand we have Mr. Frank for the appellant. Is that right? Yes, Your Honor. And you would like to reserve two minutes for rebuttal? Yes, Your Honor. Very good. You may proceed. Oh, and let me just tell counsel my understanding is that our current rules is that if the person at the podium would like to remove their mask,  you're free to do so. You are under no obligation to do so. The only thing I would ask is that you either raise or lower the podium to keep the microphone relatively close to your mouth so that we can all hear, including by Zoom. Thank you. Good morning, Your Honors. May it please the Court. This case concerns what is called a negative option auto renewal. In the context of a digital services contract, there can be an automatic renewal of the contract in certain contexts. In this context, the parties contracted for there to be notice provided to the consumers using the service in a reasonable amount and manner in advance of the auto renewal. I'm sorry. Notice of what is in the contract? What does the contract require? Notice of what? Notice that the auto renewal is coming up. And there are actually two provisions of the contract at issue. Section 5.1 requires notice if the price will increase, which it did in all the relevant years. And then further, a separate portion of the contract holds that notice is required. The District Court has already held that. Wait a second. Where's the notice required? Are you talking about notice from the trust pilot to the subscriber with regard to renewal? Yes, Your Honor. What section is that? Well, that issue isn't before the Court. The District Court has already held that notice was required. No, we sit in review of the District Court, right? Yes, Your Honor. So why don't you point us to a specific page of the appendix where the renewal notice that you purport to be required is stated in the contract? Yes, Your Honor. I know it's Section 5.1. I just have to find the page. I may be looking at the wrong thing, but is it perhaps page 83, or are there different versions in here? JA83 is where I was looking, but that may be wrong. Thank you for the help, Your Honor. Let me check. Yes, Your Honor. That is correct. So on page 83, it indicates that where there is a price increase, trustpilot.com is required to give notice to the subscribers of the imminent pricing. We're talking about renewal, though. Yes, Your Honor. So answer my question again, please. Where does it require notice of renewal? You mean separately from this provision, Your Honor? You said there were two notices required by the contract. I asked you for references to where they were. Yes, Your Honor. So the second reference I believe is on page JA84. The governing section on auto renewal is Section 7.2. You think that requires trustpilot to send a notice reminding the subscriber that they have to renew? That was the finding of the district court, yes. You think the district court ruled that? Well, I can't delineate whether the district court relied entirely on Section 7.2 or Section 5.1 in its holding that auto renewal was required. But in any event, we get it, what you claim or you argue the district court held, but this is a decision we need to make. I understand. Where is that language? It isn't in there, Your Honor. So you're left with 5.1? Yes, Your Honor. So tell us, when 5.1 says that trustpilot will inform customer of any changes in trustpilot's prices for the subsequent renewal term, how your claim as to the mere notice of renewal is required by 5.1? Because as I recall in your complaint, you didn't mention anything about prices. It is true that the complaint equates the increase in price from the auto renewal with the auto renewal itself as one action and that the complaint treats notice of the auto renewal as one action that is required. If the court is concerned that the plaintiffs didn't emphasize that the notice didn't mention the price increase, I do believe it's in there and it is a reasonable reading of the complaint that there was no mention of the price increase. Which paragraph of the complaint are you referring us to? Well, the complaint mentions no notice of price increase. I'm sorry. No, I'm looking at the joint edX. No, I'm saying the complaint is empty of any mention of notice of price increase because there was none. It only characterizes the notice as bare bones. Right. So which allegation of the complaint? Please point us to a paragraph you would like us to read to say that it fairly encompasses a claim that Section 5.1, I suppose, was violated. Sure. Well, if you're not ready, I suppose you can save that for rebuttal. You can take the time on rebuttal to do that. If you want to move on, you have 53 seconds in your principal argument and during your adversary's argument you can find that paragraph. Okay, Your Honor. Thank you. The essential argument is that what was provided can't be notice of anything. That the context of notice implies that notice will be sent with the intention that it will be received. And that the specific reading of the contract discusses that the only means of communication between the parties concerning anything related to the contract will be the Trustpilot.com address. And therefore, it is plaintiff's holistic argument that any use of notice vis-a-vis an address that isn't the Trustpilot.com address is implicitly deceptive and wouldn't be a reasonable interpretation that any consumer would have made having read the terms and conditions. So you have two minutes for rebuttal. And actually just before you sit down, just because we have a Zoom connection, let me just confirm, Judge Robinson, did you have any questions you'd like to pose right now or no? No, thank you. Okay, very good. So why don't we hear from Mr., is it Kratenstein? Kratenstein. Kratenstein, thank you. Your Honor. Yes, you may proceed. Make sure you bring the mics close to your mouth. Yes. Can you hear me all right, Your Honors? Yes. Thank you. You can actually fold them both in towards the center. Is that better? Very good. Thank you, Your Honors. May it please the Court, Andrew Kratenstein and McDermott Will and Emery, on behalf of the Apelli Trustpilot, Inc. Let me start with the contracts. That is what you all are focused on and should be focused on. So let's start with Section 7.2. That is the auto renewal provision. And as you've read, it states that the agreement will be automatically renewed at Trustpilot's then current non-standard, or rather standard non-discounted price unless, and then it goes on to say, the customer sends an email to a particular address. Excuse me. Pardon me. Deputy. Deputy. Deputy, come here. Stop the clock. He had permission to be here. Oh, okay. He had permission to be here from the clerk, so you can go out and get him. Sorry. I apologize, Mr. Kratenstein. May I proceed, Your Honor? Why don't you just wait a second? Just wait a second. Let's just stand down just for a second. Sorry, these are technical difficulties we're having here. Understood. We appreciate your patience. Okay. We're set. Why don't we just start it back at 10 minutes and we'll just give this a fresh start. Great. Thank you. Because I think we threw you off. So let's take it from the top. Thank you, Your Honors. Again, may it please the Court, Andrew Kratenstein of McDermott, Will and Emery, on behalf of the appellee, Trustpilot, Inc. I will start with the contract, which is where you were with opposing counsel. So as you read section 7.2 of the agreement on page JA84 and other pages, or places, rather, states that the agreement may be renewed by Trustpilot automatically at the then current standard non-discounted price for an additional period unless the customer sends an opt-out at least 30 days prior to the end of the term to a specified email address. So all the customer had to do, the subscriber had to do, to opt-out is read the contract and perhaps set themselves a calendar reminder. And they would have known exactly how to unsubscribe and when. Now turning to section 5.1, a couple of things to note before I get to it. First of all, it's not mentioned in the complaint. It wasn't mentioned at all below, as far as I can tell. They raised the argument for the first time in their reply brief on appeal, but it doesn't help them. And let me explain why. Section 5.1 doesn't talk about auto renewal. It talks about pricing. And you need to read section 5.1 together with section 7.2. That's how contracts, of course, as you know, should be read, so that you read them as a whole. What section 5.1 talks about is providing notification of any changes in Trustpilot's prices. So what does that mean when you read it together with section 7.2? I will give you an example. Let's assume the customer signed up, the subscriber signed up at a non-discounted price of $3,000. That would be the normal price, but is given a discount of $500 to sign up, so has now signed up for $2,500. The customer should now expect, based on section 7.2, that if that customer auto renews, the price will increase to $3,000 in the next term. Now let's assume, though, Trustpilot changed its pricing schedule such that the non-discounted price of $3,000 went up during the term to, say, $3,500. Well, now the customer faces a potential, instead of $500 price increase, a potential $1,000 price increase, of which the customer may have had no idea. In that circumstance, section 5.1 says, yes, there Trustpilot needs to give the customer a notice saying, in substance, we know you expected your price to go up by $500, but we've changed our prices and it's going up by $1,000. There is no allegation that that occurred in this case. Counsel, I think we have a question. You do need to look at the pleadings in the light most favorable to the plaintiff, Judge Robinson, and this is not in the pleadings. I am simply describing how sections 5.1 and 7.2 should be read together so that they are consistent with each other, which is a standard way to construe contracts. We have an allegation that the price was increased, and maybe you have an explanation that it wasn't actually increased, it was just they had gotten a discount, but that comes later after the complaint. And we have an allegation that there was not a contractual notice of the increase in prices. And we do have a prayer for relief in the specific counts, and I'm looking at Joint Appendix 123, there's a specific claim that it was a breach by endeavoring to impose another year's subscription at a rate greater than that of prior subscriptions into which class members entered, where neither the prior subscription nor the terms offered through the auto enroll emails permitted transpired by the so-raised rates. And I admit it's inelegant, and I admit that the fact that counsel hadn't apparently read the terms of use in advance causes that to be clunky, but doesn't that allege what you're saying doesn't appear in the complaint, which is that the price was increased without the adequate notice within the email? Well, I think what it alleges is essentially what opposing counsel said, which is that they're conflating the auto renewal with the price increase. What Section 7.2 says, clearly, is that Trustpilot can increase to the standard non-discounted price. 7.2 says that in black and white. 5.2 says if there are, quote, any changes in Trustpilot's prices, and so to read Section 5.1 and 7.2 together, what 5.1 means is basically changes in the standard pricing that Trustpilot is offering. Well, but there is an allegation again. I understand that the response will be, no, this wasn't a change in pricing, this was just the implementation of our standard pricing without the discount that they got to join, but in reading the complaint, they said you increased the prices and you didn't give the proper notice. Yes, Your Honor, they did sort of say that, but again, it's got to be consistent with the contract. The contract specifically says, and there is neither deception nor breach of the contract if the contract is followed. The contract says that Trustpilot can, on an auto renewal, increase the prices as long as it's back to the standard non-discounted price. They do not allege anywhere in the complaint that that did not occur. Trustpilot is allowed to increase the price even on an auto renewal. So we would contend that they did not That's our argument, Your Honor. If the argument really boils down to this sort of elegance of the pleadings, wouldn't the remedy be to dismiss without prejudice and get an opportunity to amend the pleadings to reflect the allegations that you say they haven't made? Well, a couple of points, Your Honor. We don't think that they could allege in good faith that the price card, so to speak, or the pricing schedule changed because it did not. But if you did remand, that's what they would have to do. We don't think that they could do that in good faith because it didn't happen. What they're alleging is that the auto renewal by itself kicked in a price increase. And they don't allege anything about price increases otherwise. So you could do that, Your Honor. Yes, you could. But then they would not be able to meet that pleading standard. I will turn to the time I have left, which is only three minutes. Let me go to the general obligation law, 5903. That is the statute that applies to contracts for service, maintenance, or repair to or for any real or personal property. The law is also clear, however, that where the services rendered are of a consulting, analytical, or administrative nature, that statute is inapplicable. And those are exactly the types of services that Trust Pilot performs, which plaintiffs repeatedly admit in their papers, perhaps most obviously, and this is on page 235 of the appendix, in their opposition to our motion to dismiss, they wrote, quote, in return for a nonrefundable annual fee, Trust Pilot was supposed to help, which is another word for consult, plaintiffs and the other members of the class, quote, analyze and aggregate consumer data and reviews to improve online visibility, for example, enhance prominence in Google search results. So by plaintiffs' own admission, this contract deals with providing consulting and analytical services, and it's clear under the case law in New York State, including the TREP case from the First Department, that providing access to data and analytics is outside the scope of the statute. The plaintiffs tried to, or the appellants tried to distinguish TREP by saying, well, that case didn't involve the TREP, and the appellants rather themselves argue, it doesn't really matter that much whose property it is, it matters more what services are being performed. As the First Department said in the Donald Rubin case, otherwise, in every employment situation or professional retainer agreement, the person hired is likely to come into contact with personal property owned by the employer, which is arguably serviced or maintained by such a person. So for those reasons, the cases cited by the appellants are an opposite. The healthcare IQ case, as you know, dealt with a doctor's office that hired a vendor to manage their billing and medical records. The Expo Shore case involved a business that hired a vendor to manage their email address list. In both of those cases, the vendor was sort of organizing the business's records. Here, we have Trustpilot, which helps the subscriber in question solicit its own customers to provide reviews, and then Trustpilot analyzes those reviews, provides data on those reviews, and consults with the customer on how best to improve its online visibility to drive more businesses to that customer. So to the extent that there is any quote, personal property here, it's purely incidental to the analytical consulting services that are being provided by Trustpilot. And in my final time, I just want to mention briefly the Ovitz case, the Ovitz v. Bloomberg case that they relied heavily on. There's a package of services, but one of the things that this contract contemplates is that the actual reviews be made available to the customer to put on their site. And aren't those reviews intangible property? Aren't those, I guess they're intangible property of Trustpilot? They're basically saying part of this contract is that you get to have these essentially license these onto your site. Well, one of the services is that you can put the reviews and display the reviews on your site. The reviews are displayed first on Trustpilot's site, and then part of the contract is you can contract to put them on your own site, as well as have Trustpilot's ratings on your own site. And Trustpilot will also consult with the customer about how to respond to the reviews, when to solicit the reviews, how to post the reviews, how to respond to good or bad reviews. So that's all consulting and analytical services. And we would say... No, no, but it's consulting and analytical services, but there also is a piece of intangible property that's passing you. There is a piece of intangible property, but as the Donald Rubin case says, almost any contract involves somehow, some way, a piece of intangible or personal property. The question again is, but what is the gravamen of this relationship? What is really going on here? And what's really going on here, by the plaintiff's own admission, is Trustpilot is helping to solicit the reviews, and then helping to display the reviews and the ratings, and also look at the analytical data that is generated by those reviews, looking at the reviews themselves, and then going back to the customer and saying to the subscriber, hey, here are some things you could do, based on what we're seeing in the reviews, to better manage your online commerce and your online image to the rest of the world. So is there some portion of intangible property involved? Yes, I won't deny that, but the gravamen of what's going on here, as the District Court found, is really consulting, analytical, or administrative in nature. They're really expanding the scope of this statute beyond what we contend it was intended to do. Could I say a word about OVITS, and then I will sit down? Please. On the OVITS case, that case, I would say, is distinguishable for two reasons. First of all, it involved a desktop terminal, and there's actually a separate provision of the statute that involves leases for personal property. So that's number one. Second, there was no allegation, as far as I can tell, or defense, as far as I can tell, in the OVITS case that Bloomberg was providing any kind of consulting or analytical services. As far as I can tell from the various cases, it's a financial news service. It was providing financial news. That's very different than the types of services that Trustpilot is performing, which includes interacting with the customer, the subscriber, to give the type of advice that I mentioned earlier. And with that, Your Honor, I see that all the time. But thank you for your indulgence. Thank you very much. And why don't we hear back from Mr. Frank. You have reserved two minutes for rebuttal. And why don't we just start, if you found that paragraph in the complaint that you were going to refer us to. Yes, Your Honor. I believe Your Honor, earlier referenced on J.H. 123, the subsection B discusses the price increases. This is, I believe, the only reference of the price increases to the complaint. But it is broadly construed, and the plaintiff's intended for it to be broadly construed. If I may pivot to Section 5903, which I think the parties agree. Have you asked for the opportunity to amend your complaint to conform to your arguments more squarely? Yes, Your Honor. And it wasn't granted. Did you raise that in your brief? I'm sorry, Your Honor. Did you raise that as error in your brief? Well, the district court didn't rule that. The district court had already held that notice was required. And so that was not an issue that would have been appropriate for us to raise at that time. So is the answer no? The answer is no, I take it. Yes. You have not asked us, as a form of relief, allow us to go back to the district court to amend the complaint. Is that correct? That's not your blue brief. I understand that was the question. Okay, let's just clarify. In your blue brief, have you asked us for one of perhaps multiple alternate forms of relief for a remand so that you can file amended complaint? Just tell us that. I think that's the question. Right. Yes, Your Honor. If on page 39 of the brief. In the conclusion? Yes, Your Honor. Because I didn't see any briefing of it, so it's just in the conclusion of page 39? Yes, Your Honor, that's where we request the relief. But you don't offer any argument? You don't cite any cases about amending complaints or anything like that? It's just in the conclusion? Yes, Your Honor. Curious. Would you perhaps, and I know we keep you over your time, but would you go back to the point that Judge Robinson raised with your adversary? And I think it's going back to the paragraph on page 123 of the joint appendix. Would you go back to that point about, you know, I understand that to be your argument. You're saying that's where you mention the price increases and therefore, you know, construing everything in the light most favorable to you, the non-moving party, we should be, I guess, either keeping it alive or perhaps giving you a chance to replete or something. Would you go back to how paragraph 90B keeps you on life support? Yes, Your Honor. The allegation in 90B specifically says that they breached the contract, they breached their contractual duties, directly and proximately causing plaintiffs harm, and the matter in which they breached their contractual duties was the rate increase. Now, under the existing contract, they could only increase, the plaintiffs argue, that they could only increase the rates given proper notice. Can we take that, I'm sorry, a little step-by-step? Because I think, well, let me ask you this question. Do you agree that the contract is a document that the district court and we are properly allowed to consider as integral to the pleadings? It was something referenced by the complaint and therefore, it's something we can consider. Yes, Your Honor. Okay. So your adversary says, well, then if you're going to read it, as a matter of contractual interpretation, it says in paragraph, I'm going to get it right at 7.2, right? It says that the agreement will be automatically renewed at Trustpilot's then current standard non-discounted price. And I take it that his argument is that, well, if you want to allege a breach of 7.2, you can't simply allege that there was an increase in price because the contract on its face allows for an increase in price as long as the increase is to the then current standard non-discounted price, right? I first would argue that the average consumer wouldn't, the term standard discounted price is not a defined term in the contract. And so I believe that the average consumer would see price increase and see it as a unitary issue. Sort of bending over backwards to see two different numbers and assign them as not a price increase is not a... So you would read those terms out of the contract and you would say that the only reasonable interpretation of those terms is will automatically be renewed at Trust... I don't know what the words are you would substitute in there, but at the same price? You're saying that the contract cannot be read to allow any increase in price whatsoever on its face? Yes, Your Honor. Then what does that language, then current standard non-discounted price mean? Or are you saying it's so technical that one must ignore it? I'm saying a normal person that looks at that would assume that it means their price, not that they were trying to carve up the concept of price into something not holistic. What if a subscriber had a discounted price to begin with? You're saying they could not understand when 7.2 talks about a non-discounted price that they could lose their discount? Well, the non-discounted price just means what the average price would be. That's what a non-discounted price means? It's an average price? I think it means a non-discounted price. Meaning you don't have a discount? Yes. So I guess that's my point. If you didn't allege whether or not you had a discount, if you had a discount and then your price goes up to the non-discounted fee, I think everybody knows that. You go to the supermarket, something's on sale, you get a discounted price. And if it's not on sale, you get the other price. So I guess what I'm wondering is since you didn't allege anything here in relation to 7.2, how did you allege a violation of 7.2? Well, initially, the plaintiffs filed their complaint, again, not referencing either of those specific premises. Well, and let's just note, without having read the contract, is that an admission that was made before Judge Rakoff? Yes, Your Honor. The contract was unavailable. The terms and conditions, the plaintiffs looked for the contract. How was it unavailable? Exactly, Your Honor. Part of the plaintiff's whole allegation here is that there was a scheme afoot to keep plaintiffs from knowing and enforcing their rights. That doesn't answer my question. How was it unavailable? They couldn't find it. How about asking for it? It's a simple thing. The plaintiff is an assignee, so I can't speak to... Seriously, you stand here and you stood in front of Judge Rakoff and you brought a lawsuit and you claim to breach a contract and you hadn't read the agreement? Don't you find that to be slightly a deviation of professional standards? Your Honor, actually, this exact question came up before Judge Rakoff. I know. I read his opinion. I read the transcript of the argument. The plaintiff's position is that because there would be no provision of the contract that would allow automatic renewal without notice. What if there was a provision? What if there was a provision that said automatic renewal is permitted without notice? The statute does not allow a carve-out in the contract. Two different questions. One is whether the contract would be legal, but you just said that there couldn't have been a contractual provision. And I'm saying, if you didn't read the contract, how do you know what's in the contract? We did our best to obtain the contract prior to litigation, and the plaintiff whom had read the contract indicated that they didn't believe that such a provision was in there. We did rely on the party to the contract's interpretation to some degree, and particularly our belief that the statute does not permit them to write notice out of the rights of the plaintiffs, and that the Himmelsden case really makes it clear that the statute is meant to be construed broadly, not narrowly. Let me just interrupt you here, because we've kept you long over time. Let me just ask again, Judge Robinson, because we're remote, do you have any further questions? Then I think we've heard the arguments of both parties. We thank you very much for coming down to New York and appearing for us today. We will reserve decision. Thank you very much.